# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-00270-SCT

*JAMES FORTENBERRY AND LINDA
FORTENBERRY*

*v.*

*CITY OF JACKSON, MISSISSIPPI AND
NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2007 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KEN R. ADCOCK |
| ATTORNEYS FOR APPELLEES: | PIETER JOHN TEEUWISSEN |
| | CLAIRE BARKER HAWKINS |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENTS OF THE HINDS COUNTY CIRCUIT COURT ARE REINSTATED AND AFFIRMED - 02/10/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2008-CT-00271-SCT

*FLYNN WALLACE AND KATHLEEN WALLACE*

*v.*

*CITY OF JACKSON, MISSISSIPPI AND STATE
FARM FIRE AND CASUALTY COMPANY*

DATE OF JUDGMENT:              06/11/2007
TRIAL JUDGE:                  BOBBY BURT DELAUGHTER
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:      KEN R. ADCOCK
ATTORNEYS FOR APPELLEES:      PIETER JOHN TEEUWISSEN
                              CLAIRE BARKER HAWKINS
NATURE OF THE CASE:           CIVIL - TORTS-OTHER THAN PERSONAL
                              INJURY & PROPERTY DAMAGE
DISPOSITION:                  THE JUDGMENT OF THE COURT OF
                              APPEALS IS REVERSED AND THE
                              JUDGMENTS OF THE HINDS COUNTY
                              CIRCUIT COURT ARE REINSTATED AND
                              AFFIRMED - 02/10/2011
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    This case comes before the Court from the Mississippi Court of Appeals, which found

on appeal that the City of Jackson was not immune from liability under the Mississippi Tort

Claims Act, because its duty to maintain the municipal sewage system was a ministerial

function as set forth by its own 1977 Subdivision Ordinance.  The City petitioned for

certiorari and asserts that the Court of Appeals erred because: (1) it did not properly apply

portions of the Mississippi Tort Claims Act; (2) it misconstrued the purpose of Mississippi

Code Section 21-27-189; and (3) it erroneously applied a city ordinance retroactively.

Because municipalities are immune from liability for discretionary functions under the

Mississippi Tort Claims Act, we reverse the decision of the Mississippi Court of Appeals and

reinstate and affirm the judgments of the Hinds County Circuit Court.

**FACTS**

¶2.     The homes of James and Linda Fortenberry and Flynn and Kathleen Wallace were built in the 1960s in a subdivision that was suited with six-inch clay drainage pipes for the sewage system. In 1971, the subdivision was annexed by the City of Jackson ("City"), and later, the City passed a Subdivision Ordinance in 1977 (the "Ordinance"), which mandated that the sewage pipes installed in the City measure eight inches in diameter. The sewage system in this neighborhood is the subject of both cases.

¶3.     On different dates in April 2003, raw sewage flooded each family's home. Specifically, the Fortenberry home flooded with sewage through its toilets and bathtubs to a depth of six to eight inches. When the Fortenberry home flooded, the Jackson area had received 7.38 inches of rain. City workers, responding to a complaint submitted by the Fortenberrys, found that the City's sewer main had overflowed because of the large amount of rainwater and that the owner's cleanout was not working. Almost three weeks later, the Wallace home flooded to a depth of one foot. On the day their home flooded, the Jackson area had sustained 3.24 inches of rain. After investigation, City workers found and then cleared a blockage in the sewer line that was causing it to choke.

¶4.     Due to the flooding, the Fortenberrys and the Wallaces unsuccessfully submitted claims to the City. Both families also filed claims with their respective insurers. The Fortenberrys received $6,700 from their insurer, but the Wallaces received nothing from their insurer. Both families filed suit in Hinds County Circuit Court against the City, seeking damages for their losses. The City moved for summary judgment in both cases, asserting that the City was immune from liability under the Mississippi Tort Claims Act ("MTCA"), and both claims were dismissed. The Hinds County Circuit Court, First Judicial District,

found that, because the operation and maintenance of the City's sewage system was a discretionary function, the City was immune from liability under the MTCA, granting summary judgment to the City.

¶5.     Both families timely appealed.  The Court of Appeals combined their cases, as the issues are the same and involve similar facts.  In *Fortenberry v. City of Jackson*, the Mississippi Court of Appeals concluded that, under the Ordinance, the duty to operate and maintain the sewer system is ministerial rather than discretionary, thereby defeating the protection of the MTCA. *Fortenberry v. City of Jackson* __ So. 3d __, 2010 WL 522647, at *6 (Miss. Ct. App. Feb. 16, 2010) .  The City unsuccessfully filed a motion for rehearing, and subsequently filed a writ of certiorari, which was granted by this Court.

## DISCUSSION

¶6.     Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Miss. R. Civ. P. 56(c).  This Court utilizes a *de novo* standard when examining a grant or denial of summary judgment. *Evan Johnson & Sons Constr., Inc. v. State*, 877 So. 2d 360, 364 (Miss. 2004) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 65 (Miss. 1988)).  "The trial court must carefully review all the evidentiary matters in the light most favorable to the non-moving party." *Id.* (citing *Brown v. Credit Ctrs., Inc.*, 444 So. 2d 358, 362 (Miss. 1983)).  "When doubt exits whether there is a fact issue, the non-moving party gets its benefit.  Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt." *Brown*

4

***v. Credit Ctrs., Inc.,*** 444 So. 358, 362 (Miss. 1983) (citing ***Liberty Leasing Co. v. Hillsum***

***Sales Corp.***, 380 F.2d 1013, 1015 (5th Cir. 1967); ***Heyward v. Pub. Hous. Admin.***, 238 F.2d

689, 696 (5th Cir. 1956)).

¶7.     Review of a government entity's immunity under the MTCA triggers *de novo* review,

since immunity is a question of law.  ***City of Jackson v. Harris,*** 44 So. 3d 927, 931 (Miss.

2010).  The three issues before this Court will be discussed together as one, because the main

issue before the Court is whether the City's operation and maintenance of its sewer system

is a discretionary or ministerial function.  If it is discretionary, the City is immune under the

MTCA.

> **A.     The City's operation and maintenance of its sewer system is a discretionary function, and neither state nor federal law causes that function to be ministerial.**

¶8.     The method of determining whether an act is discretionary or ministerial is well-

settled.  *See* ***Dancy v. East Miss. State Hosp.***, 944 So. 2d 10, 16-17 (Miss. 2006).  A duty is

discretionary when it is not imposed by law and depends upon the judgment or choice of the

government entity or its employee.  *See* ***Miss. Dep't of Mental Health v. Hall***, 936 So. 2d

917, 924-25 (Miss. 2006); ***Poyner v. Gilmore***, 158 So. 922, 923 (Miss. 1935).  However, a

duty is ministerial if it is positively imposed by law and required to be performed at specific

time and place, removing an officer's or entity's choice or judgment.  ***Covington County***

***Sch. Dist. v. Magee***,  29 So. 3d 1, 5 (Miss. 2010) (quoting ***L.W. v. McComb Separate Mun.***

***Sch. Dist.***, 754 So. 2d 1136, 1141 (Miss. 1999).  This Court employs the public-policy

function test when determining whether an act of a governmental entity or its employee is

discretionary.  ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 260 (Miss. 1999) (citing

*U.S. v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). Under this test, the Court must answer two questions: 1) did the conduct or activity involve an element of choice or judgment; and if so, 2) did that choice or judgment involve social, economic, or political policy? *Dancy*, 944 So. 2d at 16.

1. **Under the first prong of the public-function test, the City's decision to operate and maintain its sewage system involved an element of judgment as provided by Mississippi Code Section 21-27-189(b).**

¶9. The City asserts that its decision to operate and maintain the sewer system is a discretionary function as provided by statute. The statute on which the City relies reads in relevant part:

> A municipality, as defined in **Section 21-27-163**, is authorized and empowered, in the *discretion of its governmental authorities*, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
> . . . .
>
> (b) To construct, *operate and maintain sewage systems*, sewage treatment facilities and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.

Miss. Code Ann. § 21-27-189(b) (Rev. 2007) (emphasis added)

¶10. In this case, Section 21-27-189(b) clearly allows the City to operate and maintain its sewage system according to its discretion, which alone would satisfy the first prong. However, the Fortenberrys and the Wallaces assert that the City's duty became ministerial once it undertook the obligation to operate and maintain the sewage system, and therefore, the City cannot escape liability through the MTCA. Both families provide cases in an attempt to support the proposition that, once the City employs its discretion, a ministerial

6

duty arises to exercise ordinary care in the upkeep of the sewage system in order to provide reasonably safe conditions. *See **City of New Albany v. Barkely***, 510 So. 2d 805 (Miss. 1987); ***City of Meridian v. Bryant***, 100 So. 2d 860, 862 (Miss. 1958); ***City of Meridian v. Sullivan***, 45 So. 2d 851 (Miss. 1950); ***Cain v. City of Jackson***, 152 So. 295 (Miss. 1934) ***City of Vicksburg v. Porterfield***, 145 So. 355 (Miss. 1933); ***Fewell v. City of Meridian***, 43 So. 438 (Miss. 1907); ***Tyler v. City of Bay St. Louis***, 34 So. 215 (Miss. 1903).

¶11.   While the above-cited cases do involve allegedly negligent municipalities and consequent property damage, none addresses the difference between discretionary and ministerial functions. Despite the City's alleged maintenance failures, this Court previously has held that failing to exercise ordinary care does not remove a governmental act from immunity under the MTCA. ***Collins v. Tallahatchie County***, 876 So. 2d 284, 289 (Miss. 2004).

¶12.   The Fortenberrys and the Wallaces also rely on ***City of Jackson v. Internal Engine Parts Group, Inc.***, 903 So. 2d 60 (Miss. 2005). In ***Internal Engine***, this Court decided that the City was negligent for failing to maintain a drainage ditch that had flooded the business of Internal Engine. *Id*. at 63. Even though that case is similar, it does not address the central issue. The neglected maintenance in ***Internal Engine*** was not covered by statute, but in this case, the City's obligation to operate and maintain its sewage system is specifically made discretionary by statute. *See* Miss. Code Ann. § 21-27-189(b) (Rev. 2007). This Court previously has acknowledged that having a statute bolsters the discretionary distinction. *See* ***State for Use and Benefit of Brazeale v. Lewis***, 498 So. 2d 321 (Miss. 1986); *see also* ***Coplin v. Francis***, 631 So. 2d 752, 754 (Miss. 1994). In ***Internal Engine***, the issue of

whether the City's decision was discretionary or ministerial was not a question, and here, that is the central question for the Court. Because the statute clearly permits the City to use its discretion, the Fortenberrys and the Wallaces cannot rely on the same negligence theory outlined in *Internal Engine* to support their claims.

¶13.    While the Fortenberrys and Wallaces further provide statements made by the City engineer and complaints made by themselves and/or their neighbors over the course of a three-year period, no authority supports their assertions that the statements and complaints can convert a statutorily designated discretionary function into a ministerial one. They cite *Mississippi Department of Human Services v. S.W.*, in which the Court of Appeals had the difficult task of determining whether DHS was liable to a juvenile who had been sexually abused by the Department's employees. *Miss. Dep't of Human Servs. v. S.W.* 974 So. 2d 253, 256 (Miss. Ct. App. 2007). There, the court found that the use of a manual, which outlined preventive procedures, converted the discretionary functions of DHS into ministerial functions. *Id.* at 260. This case is different from *S.W.*, because no authority or action converts the City's decision from discretionary to ministerial.

¶14.    The Court of Appeals looked to the 1977 Jackson Subdivision Ordinance, which required larger sewage pipes, to provide that authority, and determined that the City's decision was a ministerial function rather than a discretionary function. In making that determination, the Court of Appeals relied on Mississippi Code Section 21-27-189(b) and (i)[1] for support. *Fortenberry*, 2010 WL 522647, at *6. However, Section 205 of the

---

[1]Mississippi Code Section 21-27-189(i) authorizes municipalities in their discretion to "adopt all necessary and reasonable rules and regulations to carry out and effectuate any

8

Ordinance clearly exempts subdivisions established before 1977.[2]  *See* Jackson, Miss., Ordinances art. II § 205(4) (1977).  Nothing in the record establishes that the subdivision in question is not legally established and recorded, nor is there any indication that this subdivision has been altered in any way since 1977.

¶15.   The Court of Appeals also relied heavily on the testimony of David Willis, the City engineer, to determine that there was a genuine issue of material fact as to whether the City's decision to operate and maintain its sewage system was discretionary or ministerial.  Willis testified that sewer lines in the subdivision did not meet the minimum pipe size for sewer lines in the City, required by the Ordinance to provide for sufficient sewage flow through the City.  However, as previously stated, the Ordinance does not apply to the subdivision where the Fortenberry and Wallace homes are located.  Therefore, the minimum size requirements did not impose a duty upon the City to replace the sewer lines that service the Fortenberry and Wallace homes.

¶16.   A discretionary function clearly granted by statute cannot be converted into a ministerial function without some factual basis that removes an officer's and entity's choice or judgment regarding its decision.  The Ordinance, cited case authority, and the testimony of the city engineer all fail to persuade us on this point.  Therefore, under the first prong of the public-policy function test, the City's decision to operate and maintain its sewage system

---

waste treatment plan adopted for the metropolitan area." Miss. Code Ann. § 21-27-189(i) (Rev. 2007).

[2]"*A subdivision legally established and recorded prior to the adoption of this Subdivision Ordinance, but only if there are no alterations of said subdivision, shall be exempt from the requirements of this Subdivision Ordinance*." Jackson, Miss., Ordinances art. II § 205(4) (1977) (emphasis added).

as it saw fit involved an element of choice or judgment as clearly was granted to it by the Legislature.

> **2.** **Under the second prong of the public-function test, the City's exercise of its judgment provided by Mississippi Code Section 21-27-189(b) involved social, economic, and political policy.**

¶17.    *U.S. v. Gaubert*, from which we adopted our public-function test essentially considered the social, economic, and political policy components of this test under the umbrella of the more broad term "public policy," stating that the Federal Tort Claims Act protects "governmental actions and decisions based on considerations of public policy."[3] The City's decision incorporates public policy, because the Legislature clearly has provided that municipalities can, in their discretion, decide to operate and maintain their sewage systems.  *See* Miss. Code Ann. § 21-27-189(b) (Rev. 2007).  The Legislature is the best interpreter of public policy.  *See* ***City of Starkville v. 4-County Elec. Power Ass'n***, 909 So. 2d 1094, 1106 (Miss. 2005).  Obviously, the Legislature believed that municipalities are better suited to make decisions with regard to operating and maintaining their sewage systems.  Therefore, operating and maintaining a sewage system is an exercise of public policy.  Once the City took on the sewage system, it could fairly operate and maintain its system throughout the City with its best interests in mind.  *See* ***Coplin***, 631 So. 2d at 754-55.

¶18.    Further, operating and maintaining sewage systems clearly implicate, specifically, both economic and social policy.  First, operating and maintaining a sewage system affects social policy, because the City's sewage must be removed to promote human welfare in the

---

[3] ***U.S. v. Gaubert***, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).

City. It is clear from the record that this was the City's objective. Every time a complaint was made, the City investigated each claim and made repairs accordingly. It is undisputed that the City did fix problems when they arose. The record contains documentation indicating that the City workers went to both homes and unplugged the lines causing the flooding. Thus, it is clear that the City put forth an effort to promote human welfare by trying to solve problems as they arose.

¶19. Second, the City's decision relates to economic policy, because the City must have the funds necessary to operate and maintain its sewage system. *See Coplin*, 631 So. 2d at 755. The Fortenberrys and the Wallaces claim the City collects $ 20 million in sewage fees, which further supports the idea that the City's decisions relate to economic policy. Municipalities regularly are faced with the tough decision to maintain and repair their sewage systems or to replace the systems and incur higher costs. In their attempts to be stewards of taxpayer dollars and sewage fees, municipalities often are forced to use their discretion in deciding to repair or replace their sewer lines.

### 3. Federal law does not cause the City's decision to be ministerial.

¶20. The Court of Appeals also relied on Mississippi Code Section 21-27-163(m), which defines a "metropolitan area plan." *Fortenberry*, 2010 WL 522647, at *6 (citing Miss. Code Ann. § 21-27-163 (m) (Rev. 2007)). That section states:

> "Metropolitan area plan" means a comprehensive plan for water quality management and the control and abatement of pollution within the metropolitan area, consistent with applicable water quality standards established pursuant to the Federal Water Pollution Control Act.

Miss. Code Ann. § 21-27-163(m) (Rev. 2007). This definition, in addition to statements made at oral argument, prompted the Court of Appeals to acknowledge federal law. The Court of Appeals chose not to reach so far as to find a material question of fact, but decided it was clear that the City's duty was ministerial. *Fortenberry*, 2010 WL 522647, at \*7. Because this Court finds that, under Mississippi law, the City's decision to operate and maintain its sewage system is discretionary, this Court still must determine whether federal law transforms the City's decision into a ministerial function. We find that it does not.

¶21.    Argument was not provided on this issue, but as the Court of Appeals correctly points out, we can look to other legal authority, because *de novo* review applies. *Id.* The Federal Water Pollution Control Act (the "Act") makes it unlawful to discharge sewage into the environment. *See* 33 U.S.C.A. §§ 1311(a)(1995) and 1362(6)(2008). However, the Act is a set of goals and policies of Congress, and it does not provide a set of standards that a municipality must follow in operating and maintaining its sewage system. *See* 33 U.S.C.A. § 1251(1987).[4] In fact, the Act defers to the states and their respective municipalities in deciding how to prevent and eliminate pollution. 33 U.S.C.A. § 1251(b). The plaintiffs made no allegations that the City was dispersing pollutants into the environment. Here, an aging sewer line backed up due to excessive rainwater and flooded two homes. Therefore, this Court must return to the regulations and guidelines as set forth by Mississippi regarding pollution.

---

[4] Mississippi Code Section 21-27-163(n) refers to the Act as 33 U.S.C.S. § 1151. However, the Act has been amended, and the numbering has been changed to 1251 rather than 1151. Miss. Code Ann. §  21-27-163(n) (Rev. 2007).

¶22.     As previously discussed, Mississippi law provides a municipality with discretion to operate and maintain its sewage system, but Mississippi has established an agency to monitor pollution, the Mississippi Department of Environmental Quality ("MDEQ"). The plaintiffs alleged no law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems. Moreover, no allegations were made that the City is in violation of any state or federal regulation or law or of any of its waste-removal and treatment permits. Accordingly, the City's decision remains a discretionary function.

## B.     Liability under the MTCA for discretionary functions

¶23.     The history of sovereign immunity in Mississippi shows that municipalities were not given immunity with regard to proprietary functions until recently.[5] *Presley v. Miss. State Highway Comm'n*, 608 So. 2d 1288, 1291 (Miss. 1992); *see also Miss. Transp. Comm'n v. Rector*, 663 So. 2d 601, 602 (Miss. 1995). This Court considers a municipality a political subdivision, which entitles it to the protections of the MTCA. *Wayne Gen. Hos. v. Hayes*, 868 So. 2d 997, 1003 (Miss. 2004). One of the protections with which a municipality can shield itself is the waiver-of-immunity exemption based upon the exercise of a discretionary function. *See Robinson v. Indianola Mun. Separate Sch. Dist.*, 467 So. 2d 911, 915 (Miss. 1985); *see also* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2002). Therefore, when a municipality, such as the City, otherwise could be liable for a discretionary decision that

---

[5] Proprietary functions are somewhat similar to discretionary functions. Proprietary functions are those not required by statute or law, giving the municipality freedom to carry out the function or not. *Anderson, By and Through Doss v. Jackson Mun. Airport Auth.*, 419 So. 2d 1010, 1014 (Miss. 1982).

resulted in damage to another, it is shielded from liability through the protections of the MTCA. *See **Harris ex rel Harris v. McCray***, 867 So. 2d 188, 189-90 (Miss. 2003).

¶24.    The City's decision is discretionary because it meets both prongs of the public-policy function test. In addition, the decision made by the City to operate and maintain its sewage system was a discretionary function granted by statute. Therefore, the Court of Appeals' decision relying on the Ordinance to find that the City had a ministerial duty to operate and maintain the sewage system at issue is misplaced. The City's decision is discretionary under the principles of the public-policy function test, and the applicable statute allows the City to operate and maintain its sewer system according to its discretion and without rigid guidelines.

¶25.    Applicability under any one of the provisions of Mississippi Code Section 11-46-9 provides immunity for a governmental entity and its employees. Miss. Code Ann. § 11-46-9 (Rev. 2002); *See **State v. Hinds County Bd. of Supervisors***, 635 So. 2d 839, 842 (Miss. 1994) ("the State cannot be held liable for damages if the conduct falls within *one* of the exceptions found in Miss. Code Section 11-46-9") (emphasis added). The City's argument that the Court of Appeals overlooked Mississippi Code Section 11-46-9(1)(b) is not necessary, because Section 11-46-9(1)(d) provides the City with immunity. Therefore, the Court finds that the City has immunity under Mississippi Code Section 11-46-9(1)(d) alone, without discussion of Mississippi Code Section 11-46-9(1)(b).

## CONCLUSION

¶26.    Because the City's decision to operate and maintain its sewage system is discretionary, the MTCA applies with full force and purpose. Therefore, the City is immune

14

from liability. There is no material question of fact in that regard, and summary judgment in the City's favor is affirmed. Accordingly, we reverse the Court of Appeals and reinstate and affirm the ruling of the Hinds County Circuit Court.

¶27. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENTS OF THE HINDS COUNTY CIRCUIT COURT ARE REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., AND DICKINSON, J., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, KITCHENS AND CHANDLER, JJ.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶28. According to the circuit court, "[w]hen to repair, how to repair, where to repair, and how much money to spend on repairs are all decisions better left to the city governments of this state." In my opinion, the circuit court's conclusion, upheld by the Majority, is overbroad and misconstrues the plain language of Mississippi Code Section 21-27-189(b). (Maj. Op. at ¶ 26). Therefore, I respectfully dissent.

¶29. Under Section 21-27-189(b), there is no question that the City had the discretionary authority "[t]o construct, operate and maintain sewage systems . . . ." Miss. Code Ann. § 21-27-189(b) (Rev. 2007). Stated otherwise, the City was empowered to engage in such activities by itself, or to defer such functions to the private sector. This decision was indeed discretionary. But there is a vast difference between the statutorily supported discretion to engage in such activities, and the practical, mundane, day-to-day operation and maintenance actions which arise after the exercise of such discretion, to which the statute does not speak. For example, does the City have the discretion to decline to take water samples to determine

15

its fitness for consumption? Can the City refuse to stop raw sewage from entering its water supply? May the City simply decline to replace a broken water main on High Street? Once the City exercises its discretionary "powers and authority" to "construct, operate and maintain[,]" it is then incumbent that its employees exercise concomitant duties in operation and maintenance. Miss. Code Ann. § 21-27-189(b) (Rev. 2007). Such duties are neither exclusively discretionary nor ministerial. Instead, a case-by-case analysis is appropriate.

¶30. Following the adoption of the Mississippi Tort Claims Act ("MTCA"), this Court considered a factually analogous case in which Internal Engine Parts Group ("Engine Parts") sought damages "for alleged acts of negligence and breach of contract against the City of Jackson for property damage sustained during a period of heavy rainfall and flooding." *City of Jackson v. Internal Engine Parts Group, Inc.*, 903 So. 2d 60, 62 (Miss. 2005). Engine Parts maintained that the flood damage it sustained was caused by a nearby drainage ditch, maintained by the City, "that was filled with pre-existing debris and materials which obstructed the flow of water." *Id*. This Court addressed "[w]hether the City was negligent for failing to *inspect and maintain the drainage ditch*, and consequently allowing a dangerous condition to exist." *Id*. at 64 (emphasis added). In affirming the circuit court's judgment in favor of Engine Parts, this Court stated that "Section 11-46-9 is the applicable statute to determine the immunity of the City, and § 11-46-9 fails to establish such immunity." *Id*. at 62, 64. Both the circuit court and the Majority attempt to distinguish *Internal Engine* by arguing that, unlike the operation and maintenance of a sewage system, the neglected maintenance of a drainage ditch is not made discretionary by statute. (Maj. Op. at ¶ 12). But as noted in ¶ 29 *supra*, the City's obligations in operation and maintenance of

16

a sewage system are *not* automatically rendered discretionary by Section 21-27-189(b). Therefore, I would find that *Internal Engine* is in direct conflict with the Majority's holding, and that it supports reversing the circuit court's entry of summary judgment on behalf of the City.[6]

¶31.   In some instances, the City's operation and maintenance actions will involve "an element of choice or judgment" which implicates "social, economic or political policy alternatives." *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001) (citing *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999)).   For example, the municipality's annual budgeting meetings addressing system improvements would likely be discretionary.   As the circuit court stated, "[t]his [c]ourt will not mandate which particular sewage pipes the City should fix, and what amount of monies it should expend on its sewage repair."   But such logic does not authorize the City to operate and maintain the sewage system in place with unfettered discretion "and without rigid guidelines."   (Maj. Op. at ¶ 24).   Surely, many day-to-day operation and maintenance

---

[6]Moreover, prior to the adoption of the MTCA, this Court repeatedly held municipalities liable for the negligent maintenance of drains and sewage systems. *See City of Meridian v. Bryant*, 232 Miss. 892, 895, 100 So. 2d 860, 861 (1958) (affirming judgment against the City of Meridian for water damage to the Bryants' property resulting from the City permitting debris to accumulate around nearby storm sewers, noting that "the tendency of drains to become obstructed must be kept in view, and . . . the situation must be remedied from time to time so as to maintain adequate drainage in each case"); *City of Meridian v. Sullivan*, 209 Miss. 61, 68-69, 45 So. 2d 851, 852-53 (1950) (affirming judgment against the City of Meridian for water damage to Sullivan's property resulting from the City breaking a large hole in Sullivan's culvert and "negligently fail[ing] to keep its own culverts free from obstructions . . . ").

decisions can be ministerial.[7] *See* ¶ 29 *supra* (examples provided). The Majority's approach paints with too broad a brush, foreclosing the possibility that any (not one) of the City's operation and maintenance decisions involving its sewage system may be ministerial. (Maj. Op. at ¶ 12) ("the City's obligation to operate and maintain its sewage system is . . . made discretionary by statute.").

¶32. In conclusion, the circuit court erred in granting summary judgment on the "one-size-fits-all" basis that Section 21-27-189(b) rendered discretionary all of the City's operation and maintenance decisions. In so concluding, I pass no judgment on the cause and/or forseeability of the backflow of raw sewage at issue, i.e., whether that result was precipitated by an "act of God" (the heavy rainfall), the disrepair of a homeowner's cleanout, a blockage in the homeowners' service lines and the City's main sewer line, and/or surface water entering the sewer lines through cracks. But if the City's operation or maintenance of the sewage system is implicated as a cause, then the circuit court must consider whether the surrounding actions of the City were discretionary or ministerial. That issue cannot be resolved by Section 21-27-189(b), such that summary judgment predicated thereon was improper. Therefore, I respectfully dissent.

---

[7]This Court has stated that if:

> the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.

*Collins v. Tallahatchie County*, 876 So. 2d 284, 289 n.9 (Miss. 2004) (quoting *Miss. Dep't of Transp. v. Cargile*, 847 So. 2d 258, 267-68 (Miss. 2003)).

**LAMAR, KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**